IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOHN PATRICK MORAN,          )
        *Plaintiff*,          )
                          )
v.          )  Civil Action No. 1:23-cv-1681 (PTG/LRV)
                          )
LLOYD AUSTIN,          )
    *in his official capacity as*          )
    *Secretary of Defense, et al.*,          )
        *Defendants*.          )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss ("Motion"). Dkt. 12. John Patrick Moran ("Plaintiff") sues Defendants Lloyd Austin, in his official capacity as Secretary of Defense; Michelle Howard, Retired Admiral, in her official capacity as Chair of the Naming Commission; Christine Wormuth, in her official capacity as Secretary of the Army; and Karen Durham-Aguilera, in her official capacity as Executive Director of the Office of the Army Cemeteries (collectively, "Defendants"). In his Amended Complaint, Plaintiff challenges the removal of the Confederate Memorial ("the Memorial") from Arlington National Cemetery, alleging several claims under section 370 of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021; the Administrative Procedure Act; the Due Process Clause of the Fourteenth Amendment; the Free Exercise Clause of the First Amendment; Article I, Section 9, Clause 3 of the Constitution; Article III of the Geneva Convention of 1949; and 20 C.F.R. § 1501.2. Dkt. 9 ("Am. Compl."). Plaintiff asks the Court "to order [that] the Memorial be returned" to its prior location. *Id.*

1

In their Motion, Defendants allege that Plaintiff lacks standing to bring this suit, which in turn, divests the Court of subject matter jurisdiction.[1] Dkts. 12, 13. For the reasons below, the Court agrees and will dismiss the case for lack of subject matter jurisdiction.

## Factual and Procedural Background

### A. Statutory History[2]

In January 2021, Congress enacted section 370 of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("NDAA"). The NDAA requires the Secretary of Defense to "establish a commission [("Commission")] relating to assigning, modifying, or removing of names, symbols, displays, monuments, and paraphernalia to assets of the Department of Defense that commemorate the Confederate States of America or any person who served voluntarily with the Confederate States of America." 134 Stat. 3388, 3553 (2021). The Commission is required to "develop a plan to remove [these] names, symbols, displays, monuments, or paraphernalia" and "present a briefing and written report" to the Committees on Armed Services of the Senate and House of Representatives. *Id.* § 370(c)(4), (g). NDAA Section 370 required the Secretary of Defense to implement the plan no later than January 1, 2024. *Id.* § 370(a).

In 2022, the Naming Commission published its Final Report ("Report") to Congress, which concluded that the "Confederate Memorial . . . at Arlington National Cemetery" was a monument "within its remit" and recommended that "[t]he statue atop of the monument" and "[a]ll bronze

---

[1] Defendants also argue that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). But because the Court's determination on standing is dispositive, it will not address Defendants' arguments regarding Rule 12(b)(6). Dkt. 13 at 14–21.

[2] *See generally Defend Arlington v. Dep't of Def.*, No. 1:23-cv-1730, 2023 WL 8788956 (E.D. Va. Dec. 19, 2023) (setting out statutory background related to removal of the Memorial).

2

elements on the monument" be removed. U.S. Dep't of Def., Naming Comn'n, Final Rep. to Cong. Part III: Remaining Dep't of Def. Assets (2022), at 15–16. The Report recommended "leaving the granite base and foundation in place to minimize risk of inadvertent disturbance of graves." *Id.* at 16. On October 6, 2022, Secretary of Defense Lloyd Austin issued a memorandum "concur[ring] with all of the ... Commission's recommendations" and "committ[ing] to implementing all of the Commission's recommendations as soon as possible." Memorandum from Lloyd Austin, Sec'y of Def., to Senior Pentagon Leadership Def. Agency and DoD Field Activity Directors, Implementation of the Naming Comn'n's Recommendations (Oct. 6, 2022). As of December 22, 2023, the statue and all bronze elements were removed from the Memorial, leaving only the granite base. *Confederate Memorial Removal Update and Advisory*, ARLINGTON NATIONAL CEMETERY, https://www.arlingtoncemetery.mil/Media/News/Post/13395/Confederate-Memorial-Removal-Update-and-Advisory [https://perma.cc/3HJ2-AMTJ].

**B.   Plaintiff's Lawsuit**

On December 8, 2023, Plaintiff filed this civil action. Dkt. 1. On December 14, 2023, Plaintiff filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction to "enjoin[ ] the defendants, and all persons acting on their behalf, from removing any element of the Confederate Memorial at Arlington National Cemetery pending entry by this Court of a final judgement in this action." Dkt. 5 at 1. On December 18, 2023, the Court denied Plaintiff's motion. Dkt. 6. On December 22, 2023, Plaintiff filed an Amended Complaint. Am. Compl.

In his Amended Complaint, Plaintiff alleges seven claims against Defendants, challenging the removal of the Memorial. *Id.* First, he brings a claim for "Violation of Statutory Authority [under section] 370(a) of the [NDAA] under the APA." *Id.* at 24. He argues that the Commission

3

"exceeded its statutory authority . . . by recommending the removal" of the Memorial because the Commission's finding that the Memorial "was within its remit for removal was beyond the plain text" of the NDAA. *Id.* ¶¶ 53–54.

Second, Plaintiff claims that Defendants "violat[ed] . . . NDAA . . . [section] 370(j) under [the] APA." *Id.* at 29. He contends that the Memorial "meets the Commission's own definition of grave marker," and grave markers are exempt from removal. *Id.* ¶ 65.

Third, Plaintiff argues that Defendants "violat[ed] . . . NDAA . . . [section] 370(c)(2) under [the] APA" and the "Due Process Clause of the Fourteenth Amendment." *Id.* at 30. He contends that "under [section] 370(c)(2)," the Commission "had a statutory obligation" to "'develop procedures and criteria to assess' what assets...meet[] the [c]riteria for [r]emoval." *Id.* ¶ 68. Plaintiff further asserts that the Commission's "mischaracterization[]" of the features of the Memorial to "'fit' the requirements [for removal under section] 370" is explained by the Commission's failure to develop procedures for characterization of assets, as required by section 370(c)(2). *Id.* ¶¶ 69-70, 77.

Fourth, Plaintiff brings a claim for "violation of the Free Exercise Clause of the First Amendment." *Id.* at 40. He contends that "[c]asting an explicit visible sign of material stigma over a graveyard of the dead [by removing the Memorial] . . . psychologically intrudes upon and chills the religious use of the . . . memorial site for those with an interest in using it." *Id.* ¶ 82. He argues that "[t]his mark of shame will disrupt [his] ability to peacefully memorialize his . . . ancestor's sacrifice of life." *Id.* ¶ 89. Plaintiff further contends that the "visible desecration [of the Memorial] will also be acute for the plaintiff as an openly gay man raised in the Deep South who will lose a singularly unique, cultural[,] and religious object sculpted by a Confederate veteran who lived in a long-term same-sex relationship." *Id.* ¶ 91.

Fifth, Plaintiff argues that Defendants "violat[ed] . . . the prohibition on bills of attainder in Article I, Section 9, Clause 3 of the Constitution." *Id.* at 47. He asserts that "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *Id.* ¶ 98 (citing *United States v. Lovett*, 328 U.S. 303 (1946)). Plaintiff further contends that "the carrying out of NDAA 2021 [section] 370 has effectively declared [his ancestor] . . . guilty of treason and punished him for it," and thus argues that NDAA section 370 is an unconstitutional bill of attainder. *Id.* ¶¶ 98–100. Plaintiff also argues that this declaration of his ancestor as a traitor is "stigmatic defamation" of his ancestor, which is "an injury in fact." *Id.* ¶ 102.

Sixth, Plaintiff asserts that Defendants "violat[ed] . . . Article III of the Geneva Convention of 1949." *Id.* at 51. He argues that Article III requires "[t]he detaining authorities [to] ensure that prisoners of war who have died in captivity are honorably buried . . . and that their graves are respected, suitably maintained and marked so as to be found at any time." *Id.* ¶¶ 108, 110. Plaintiff also contends that he has a strong "personal and emotional connection to the Confederate Memorial in Arlington National Cemetery and to the graves of the many prisoners of war buried there" because of his "longstanding" "interest in the rights of prisoners of war and the integrity of their burials." *Id.* ¶ 108. As an example of this interest, Plaintiff notes that "he made a history fair project on the 'Geneva Convention and the Rights of Prisoners of War' at an impressionable age," and "interviewed Congressman Pete Peterson, a [prisoner of war] in Vietnam." *Id.*

5

Seventh, Plaintiff claims that Defendants "violat[ed several sections] of the National Environmental Policy Act [("NEPA")] under the "APA."[3] *Id.* at 59. He also alleges that Defendants "violat[ed]...[40 C.F.R.] § 1501.2" and "the Due Process Clause of the Fourteenth Amendment." *Id.* The provisions that Plaintiff alleges Defendants violated touch on the federal government's responsibility under NEPA to ensure that, in implementing federal government functions, the "Nation" "preserve[s] important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice." Pub. L. No. 91-190, § 101(b)(4). NEPA also requires that the federal government agencies prepare "a detailed statement . . . on . . . reasonably foreseeable environmental effects of the proposed agency action" and "ensure the professional integrity" of any "environmental document[s]" that the agency prepares. *Id.* § 102(2)(c), (2)(d). Plaintiff contends that Defendants did not adhere to these requirements.

As related to standing, Plaintiff alleges that he is the great-great-great grandson of a Confederate prisoner of war. *Id.* ¶ 6. He claims that his ancestor's "loss of life during the Civil War is memorialized" by the Memorial, and the removal will cause his ancestor to be "defamatorily stigmatized." *Id.* Plaintiff's ancestor was buried in Illinois, and this burial site contains a Confederate statue similar to the Memorial in Arlington. *Id.* ¶¶ 6, 29. Because of this similarity, Plaintiff contends that "the fate" of the Confederate statue in Illinois "is inextricably linked with that of the Confederate Memorial in Arlington." *Id.* at ¶ 29. Plaintiff avers that he visited the Memorial on "December 21st" and that he "learned of the Memorial . . . while visiting Virginia driving home from a wedding." *Id.* ¶¶ 14, 48. Plaintiff seems to contend that he plans to

---

[3] Plaintiff appears to allege that Defendants violated sections 101(b)(4), 102(2)(c), 102(2)(d), 106(a) of the National Environmental Policy Act of 1969. Am. Compl. at 59.

6

visit the Memorial in the future, averring that "[w]hen he next visits the Memorial site he will likely visit a sacred space desecrated by the state," as a result of the Memorial's removal. *Id.* ¶ 50. Plaintiff claims that the "concrete physical change at the site [as a result of the Memorial's removal] will undermine the ability of . . . [P]laintiff to use the very Memorial site dedicated to the death of his great-great-great grandfather." *Id.* In his prayer for relief, Plaintiff asks "that the Court order . . . [D]efendants and those acting on their behalf and in their stead to return with dignity the Confederate Memorial of Arlington National Cemetery to its original location in that hallowed ground." Am. Compl. ¶ 69.[4]

As stated, Defendants filed the instant Motion, asserting that Plaintiff lacks standing for his claims alleged in the Amended Complaint. Dkts. 12, 13. Having been fully briefed, this matter is ripe for resolution.

## Legal Standard

Federal district courts are courts of limited subject matter jurisdiction as "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). As the Fourth Circuit has recognized, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3) (providing that the court may dismiss for lack of subject matter jurisdiction at "any time")). "Standing 'is a threshold jurisdictional question' that ensures a suit is 'appropriate for the exercise of the [federal] courts'

---

[4] As noted in Defendant's Memorandum, the removal occurred in December 2023. Dkt. 13 at 1. To that extent, Plaintiff's request appears moot. The Court notes that since the filing of the instant Motion, Plaintiff has filed a Motion for Leave to Amend [the Amended] Complaint (Dkt. 22), which the Court will address by separate order. Given this posture, the Court will proceed to address Defendants' standing argument.

judicial powers.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (alteration in original) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)).

"The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]," which are discussed below. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When assessing whether the complaint alleges facts upon which jurisdiction can be based, the district court must treat the facts alleged in the complaint as true and grant the motion under Rule 12(b)(1) if the complaint fails to allege sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### Analysis

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* "Second, there must be a causal connection between the injury and the conduct complained of" such that the injury is fairly traceable "to the challenged action of the defendant." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41 (1976)). Lastly, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).

The standing inquiry focuses on the defendant's challenged conduct. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing 'in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal,' and we thus put aside for now [the plaintiff]'s Eighth Amendment challenge and consider whether he has established the existence of a 'case or controversy.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted))); *Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 912 (9th Cir. 2020)

8

("[T]he standing inquiry focuses on whether the [plaintiff]'s injury is 'fairly traceable to the challenged conduct.'" (quoting *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015))).

"[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562. In *Lujan*, the plaintiffs challenged "a rule promulgated by the Secretary of the Interior interpreting [section] 7 of the Endangered Species Act of 1973 (ESA) . . . in such fashion as to render [section 7] applicable only to actions within the United States or on the high seas." *Id.* at 557–58. The rule at issue required federal government agencies to consult with the Secretary of the Interior to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." *Id.* at 558. Before the challenged rule took effect, such agencies were required to consult with the Secretary of Interior for all projects, within and outside of the United States. *Id.* The challenged rule instead required agencies to consult with the Secretary of the Interior only for projects that took place within the United States. *Id.* The plaintiffs alleged that this change "increas[ed] the rate of extinction of endangered and threatened species," thus injuring the plaintiffs. *Id.* at 558–59, 562.

The Supreme Court recognized that the plaintiffs' "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Id.* at 562–63. However, the Court held that, assuming that the plaintiffs had established traceability such that certain government agency projects abroad threatened certain animal species, the fact that the plaintiffs "'had visited' the areas of the projects before the projects commenced" was not sufficient to establish standing. *Id.* at 564. The Court further concluded that

9

the plaintiffs' "profession of an 'inten[t]' to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species" was not enough to establish standing. *Id.* The Court explained that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that" the standing inquiry requires. *Id.*

In another case like the one here, the Fifth Circuit concluded that the plaintiffs did not have standing for free-speech claims related to removal of Confederate monuments even when the plaintiffs were "particularly invested in these monuments" because they were "descendants of Confederate veterans." *McMahon v. Fenves*, 946 F.3d 266, 270–71 (5th Cir. 2020). The court concluded that the plaintiffs had no standing for their claims because the injuries they alleged were psychological injuries produced by observing conduct with which the plaintiffs disagreed. *Id.* at 271 ("For Plaintiffs, their injury is the pain of believing that a certain expression of a viewpoint with which they agree has been unconstitutionally removed from public display. That is a generalized psychological injury, not a particularized free-speech one—it is felt by all who are offended by this removal.").

Here, Plaintiff has not alleged facts sufficient to establish standing. As in *Lujan*, Plaintiff merely alleges that he has visited the site where the Memorial once was and has plans to visit in the future. Specifically, he asserts that he "visited the site on the afternoon of Thursday[,] December 21st." Am. Compl. ¶ 14. He also contends that he "learned of the Memorial . . . while visiting Virginia driving home from a wedding."[5] *Id.* ¶ 48. As to plans of future visits, Plaintiff

---

[5] Plaintiff also contends that he "has visited Arlington National Cemetery multiple times since he was a middle [s]chooler." Am. Compl. ¶ 36. He asserts that he "would have visited the Confederate Memorial as a young man if he had known of its existence, but it was in the back of

avers that "[w]hen he next visits the Memorial site he will likely visit a sacred space desecrated by the state," because the Memorial will likely have been removed. *Id.* ¶ 50. Plaintiff does not allege that he visits the Memorial regularly, nor does he allege any facts that amount to concrete plans to visit the Memorial in the future. And as in *McMahon*, his status as a descendant of a Confederate prisoner of war does not elevate this psychological injury into an "actual" "injury in fact" sufficient to confer standing. *See id.* ¶ 6. Plaintiff does not allege that his ancestor was buried at the site of the Memorial—in fact, he alleges that his ancestor is buried at a site in Chicago. *Id.* ¶ 29. Plaintiff's contention that he has a connection to the Memorial because Plaintiff is "an openly gay man raised in the Deep South" and the sculptor of the Memorial was similarly "a Confederate veteran who lived in a long-term same-sex relationship" also does not state an injury for standing purposes. *Id.* ¶ 91. Nor does Plaintiff's "longstanding" "interest in the rights of prisoners of war and the integrity of their burials" state such an injury. *Id.* ¶ 108.

In sum, Plaintiff has not alleged facts that show that he has suffered an injury other than psychological injury based on his displeasure with the government's decision. *See Lujan*, 504 U.S. at 566–67 (concluding that "anyone who has an interest in" the topic affected by the government's challenged action is not "appreciably harmed by a single project affecting [the topic or object of the challenged government action] with which he has no more specific connection"). Thus, the Court finds that Plaintiff has not pleaded facts sufficient to establish standing for his claims and will dismiss this case without prejudice. *Adams Outdoor Advert. Ltd. v. Beaufort County*, 105 F.4th 554, 566 (4th Cir. 2024) ("A dismissal for lack of standing—or any other defect

---

the Memorial and not a stop on the cemetery tour." *Id.* In this paragraph, Plaintiff does not appear to allege that he has visited the Memorial multiple times since he was a middle schooler. However, even if he does make such allegations, such allegations are not enough to establish Article III standing, for the reasons stated in the Analysis section.

11

in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.") (internal citation and quotations omitted).

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 12) is **GRANTED**. Plaintiff's Amended Complaint (Dkt. 9) is **DISMISSED without prejudice.**

This is a final order for the purposes of appeal. To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within sixty (60) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

/s/
**Patricia Tolliver Giles
United States District Judge**

Entered this 27th day of September, 2024.
Alexandria, Virginia